UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**In the Matter of:**

**COMPLAINT OF STEPHEN HOLMBERG,**
**as Owner of that certain 19' Sea Ray**
**2002 182 BR, HIN #SERR4245E202, with**     Case No. 8:08-cv-656-T-27TBM
**Single IB/OB Merc 190 horsepower engine,**
**FOR EXONERATION FROM, OR**
**LIMITATION OF LIABILITY**
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the court for a Report and Recommendation on Claimant Kandi Wenzel's **Motion to Reopen Case, Vacate Order Granting Petitioner's Motion for Exoneration of Liability, Injunction as to Lawsuits and Claims, and for Reinstatement of Ad Interim Stipulation and for Allowing the Late Filing of a Claim of Kandi Wenzel and Memorandum of Law in Support of Motion** (Doc. 22) and Petitioner, Stephen Holmberg's response (Doc. 23).

This is a maritime action for exoneration from liability or, alternatively, limitation of liability brought pursuant to 46 U.S.C. § 30501 and 28 U.S.C. § 1333, Rule 9(h) and Supplemental Rule F. *See* (Doc. 1). The verified complaint alleges that Stephen Holmberg ("Holmberg") was the owner and operator of a 19' Sea Ray boat that was traveling eastbound into the Alafia River at 12:15 a.m. on July 8, 2007, when his boat was struck head-on and without warning by a boat operated by Randolph Cunningham (the "Cunningham boat"), traveling westbound without any running lights or illumination. *Id.* Holmberg further alleges

that both boats were damaged by the collision, and the operator and passengers of the Cunningham boat, as well as himself, sustained injuries. Kandi Wenzel ("Wenzel" or "Claimant") was an injured passenger on the Cunningham boat. Holmberg alleges the amount of foreseeable claims will exceed the value of his vessel or $4,000.00. Holmberg denies fault in the accident, the existence of any other proceeding or action arising out of the accident, liability for any claims arising out of the accident, and he claims exoneration from liability or, alternatively, limitation of liability for all claims. *See id.*

As set forth in more detail below, after entry of a clerk's default against Claimant, the court entered a final order exonerating Holmberg from any and all fault and liability arising out of the boating accident and directed the closing of this file.

By the instant motion, Claimant seeks to have the case reopened and the court's Order granting Petitioner's motion for final decree of exoneration vacated to allow Claimant to file a late claim. Claimant asserts that she was seriously injured as a result of the collision, and that due to a series of errors and mistakes which are not directly attributable to her, her claim against Petitioner was not timely filed on or before the deadline of September 18, 2008. Specifically, she represents that her address since 2003 has been 1338 Eagleview Drive, Brandon, Florida. Despite this fact, motions, orders, and correspondence from the court, apart from the August 22, 2008, re-mailing of the second Notice of Filing of All Claims, were sent to 1009 N. Parsons Avenue, Brandon, Florida, the address of her 84 year-old mother.[1]

---

[1]Claimant identifies the following as all sent to the wrong address. *See* (Docs. 1, 4, 5, 7, 8, 9, 13, 16, 17, and 20).

Although Holmberg's attorneys were on notice that Claimant was represented by counsel, she claims they did not notice her counsel of the limitations proceeding. She urges that she has acted diligently since receiving the notice and given the equitable considerations, her meritorious claim, and serious injuries, the court should enlarge the time and permit her to file a claim. (Doc. 22).

I.

A brief time-line taken from the Claimant's affidavit and exhibits (Doc. 22) and court records may be useful,

On or about July 8, 2007 - Date of accident;

On or about July 29, 2007 - Claimant hires Burnetti P.A. law firm to represent her;

On April 7, 2008 - Holmberg files his Verified Complaint for Exoneration from, or in the alternative, Limitation of Liability (Doc. 1) and an Ad Interim Stipulation for Value and Costs (Doc. 4);

On May 15, 2008 - The ad interim stipulation is approved, setting the value of Holmberg's vessel at $4,000.00 (Doc. 7). The court directs the Clerk to issue notice to all persons entitled to assert claims, as well as notice by publication in the Tampa Tribune (Doc. 8). A copy of the order and a Notice of Filing of All Claims ("Notice") (Doc. 9) is purportedly furnished to the Claimant, among others, at 1009 N. Parsons Avenue, Brandon, Florida 33510;

On June 23, 2008 - Counsel for Holmberg files notice of proof of publication of Notice (Docs. 10, 11);

On August 1, 2008 - The court directs Holmberg to file a status report (Doc. 12). The report is filed August 8, 2008 (Doc. 13). Among other things, the report notes that the Clerk has failed to send copies of the Notice as directed. Counsel indicates that he sent out the Notices certified mail and a copy of the cover letter indicates the same was sent to Claimant at 1009 N. Parsons Avenue, Brandon, Florida 33510;

On August 12, 2008 - Holmberg files Petitioner's Motion for Default (Doc. 14) against Claimant and others for their failure to file any claims (Doc. 14);

On August 15, 2008 - The motion for default is denied without prejudice for the failure to adhere to Supplemental Rule F (Doc. 15);

On August 18, 2008 - The Clerk sends out another Notice of Filing of All Claims ("Second Notice") to Claimant via certified mail to 1009 N. Parsons Avenue, Brandon, Florida 33510 (Doc. 17);

On August 22, 2008 - The Clerk notes the mail to Claimant was returned "undeliverable." The Second Notice is then mailed to 1338 Eagleview Drive, Brandon, Florida 33510. Claimant acknowledges receipt of this Second Notice (Doc. 22-2);

On September 17, 2008 - Burnetti P.A. composes a letter declining to represent Claimant. The letter advises that the statute of limitations period for negligence cases is four years. (Doc. 22-2, Ex. A). The envelope, addressed to Claimant at the address on N. Parsons Avenue, appears postmarked September 18, 2008. *Id.* at Ex. B;

September 18, 2008 - Deadline for filing claims;

On September 19, 2008 - Holmberg files Petitioner's Motion for Clerk's Default under Fed. R. Civ. P. 55(a) (Doc. 18);

On October 1, 2008 - Claimant hires John Bales Attorneys. Attorney Scott S. Graul avers he was not advised of the limitation action by Claimant at that time, and he first learned of the same from Holmberg's counsel on November 10, 2008 (Doc. 22-4);

On October 14, 2008 - Clerk enters default (Doc. 19);

On October 16, 2008 - Holmberg files his Motion for Final Decree of Exoneration from Liability (Doc. 20). Included is a copy of the accident investigation report by the Florida Fish and Wildlife Conservation Commission, Division of Law Enforcement;

On November 5, 2008 - The court grants the motion exonerating Holmberg from any fault and liability arising out of the accident, enjoining the claims of any and all persons, cancelling the ad interim stipulation for costs and closing the file (Doc. 21);

On December 2, 2008 - Claimant retains admiralty counsel, Mr. Jacob Munch;

On December 3, 2008 - Claimant files the instant motion.

## II.

Claimant urges that there is good cause for the court to reopen the case so that she may file her claim. Citing Supplemental Rule F(4), Fed. R. Civ. P., she urges that when a claimant is able to show cause, the court has the discretion to enlarge the time within which claims may be filed. (Doc. 22 at 6-8). By her argument, the requirement of cause is a

minimal one, requiring only that she demonstrate an *explanation* for the delay rather than a *justification*. Thus, citing *Alter Barge Line, Inc. v. Consolidated Grain & Barge Co.*, 272 F.3d 396, 397 (7th Cir. 2001), she urges that where a claimant is able to show cause, the court should freely grant permission to file late claims so long as the limitation proceeding is ongoing and the late claim will not prejudice the other parties. Given the equitable nature of admiralty proceedings, she urges that she should be given the opportunity to litigate her claim in full. Claimant and Holmberg both cite *Texas Gulf Sulphur Co. v. Blue Stack Towing Co.*, 313 F.2d 359 (5th Cir. 1963)[2] for the applicable standard under Supplemental Rule F(4). The case instructs that "[a]dmiralty is administered with equitable liberality and a simultaneous freedom from restraints or frustrations occasioned by technicalities." *Id.* at 362. In so noting, that court held that as "'long as the limitation proceeding is pending and undetermined, and the rights of the parties are not adversely affected, the court will freely grant permission to file late claims . . .' upon a showing of the reasons therefor." *Id.* (quoting 3 Benedict, *Admiralty* § 518 (Knauth ed. 1940)). Although Claimant concedes that her proceeding is not "on-going," she nevertheless urges that the limitation case is "undetermined" because only a clerk's default was entered and no testimony was taken or formal proceeding held. Given the circumstances where Holmberg's counsel mailed all notices to the wrong address and gave her first counsel no notice of the limitations action despite knowing of counsel's representation, she claims the equities favor a full resolution of the dispute on the merits. On the matter of

---

[2]In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

6

prejudice to Holmberg, she urges he would not suffer any real prejudice by the reopening of the case since all it would mean is that he has to defend his actions before this court in a trial. Lastly, she asserts that she has a meritorious claim as the accident investigation report regarding the collision references that Holmberg was traveling 25 to 30 miles per hour at night time in an area with a posted speed limit of 25 miles per hour. *See* (Doc. 22-8 at 1-2). Additionally, Holmberg's passenger, Jose B. Melgar, states that the Petitioner's vessel was traveling 35 to 40 miles per hour. *See* (Doc. 22-10). In light of the doctrine of comparative fault applicable to admiralty claims, coupled with the serious permanent injuries she sustained, Claimant urges this court should exercise its discretion under Fed. R. Civ. P. 55(c) or 60(b)(1) and (6) to set aside the default and allow her claim to be filed late.

In response, Petitioner urges as a threshold matter that Claimant's motion is properly addressed under Fed. R. Civ. P. 60(b)(1) rather than Supplemental Rule F(4) because she seeks relief from a judgment or order on the basis of mistake, inadvertence, surprise, or excusable neglect. Because Claimant has addressed her excusable neglect in the context of Supplemental Rule F(4), Holmberg does likewise and urges that she cannot satisfy the requirements of *Texas Gulf Sulphur.* Thus, it is readily apparent that this is not an "ongoing proceeding;" the case having been closed by the court. Further, the equities do not favor the Claimant, and she cannot show excusable neglect for the failure to file a timely claim. By these arguments, Holmberg rejects Claimant's lack of notice argument by which she claims all notices but one were sent to the wrong address because the address to which the notices were sent was Claimant's mother's address, and she makes no showing that she did not receive the

notices. Further, that address was the one that Claimant herself would have provided to the accident investigator from the Florida Fish and Wildlife Commission (Doc. 22-4) and the one Claimant apparently gave her own attorneys as well. *See* (Doc. 22-2 at 6).[3] In any event, Claimant admits she received the Second Notice which was re-sent by the Clerk's office on August 22, 2008. Default was not entered until October 14, 2008, and thus Claimant had ample opportunity to timely file her claim prior to the entry of default. Even after receiving the Second Notice and hiring a new attorney, she failed to notify new counsel of the limitation action. When that counsel became aware of the proceeding on November 10, 2008, some five days after the court's order, he too failed to take any action until December 2, when admiralty counsel was retained. In Holmberg's view, these circumstances suggest a failure to promptly act even after notice was given and cannot support a claim of excusable neglect. Holmberg also urges that Claimant does not have a meritorious claim given the conclusion by the accident investigator that Randolph Cunningham, the operator of the boat in which Claimant was a passenger, was the person at fault for causing the accident. *See* (Doc. 22-8, at 6-7). Finally, on the issue of prejudice, although no discovery has been conducted, Holmberg asserts that he has expended significant time, effort, and money in notifying potential claimants and timely filing his pleadings, and thus he would be prejudiced if his efforts are all for naught where Claimant has failed to provide paperwork to her attorneys which would have alerted them to these proceedings.

---

[3]He urges also that at least one piece of certified mail to Claimant was signed for at the mother's address. *See* (Doc. 22-7).

III.

The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions govern actions for exoneration and limitation of liability. Supplemental Rule A(1)(A)(iv). The Federal Rules of Civil Procedure also apply to maritime claims "except to the extent that they are inconsistent with these Supplemental Rules." *Id.* at A(2). Here, the parties cite to both Supplemental Rule F(4) and Fed. R. Civ. P. 60(b)(1) in support of their respective positions. Claimant, while asserting her right to relief under either Rule 60(b)(1) or Supplemental Rule F(4), urges that the court should be guided by Admiralty principles under Supplemental Rule F(4) because the matter is an admiralty matter and she was never served with formal process. Holmberg accepts that Claimant's right to relief, if any, comes under the excusable neglect standard of Rule 60(b)(1).

Supplemental Admiralty Rule F(4) provides in pertinent part that "[f]or cause shown, the court may enlarge the time within which claims may be filed." The Fifth Circuit interpreted the language of this rule to permit the filing of a claim *nunc pro tunc*. *See Golnoy Barge Co. v. M/T Shinoussa*, 980 F.2d 349, 351 (5th Cir. 1993) (citing *Tex. Gulf Sulphur Co.,* 313 F.2d at 360). Noting the limitation of liability proceeding's short limitation period and lack of formal process, the court adopted the "equitable" principle freely permitting the filing of late claims: "'so long as the limitation proceeding is pending and undetermined, and the rights of the parties are not adversely affected.'" *Golnoy*, at 351 (quoting *Tex. Gulf Sulphur Co.,* 313 F.2d at 362-63). However, relief from a late filed claim is not a matter of right but depends on the equitable showing. *Id.*

9

Fed. R. Civ. P. 60(b)(1) allows for relief from a final judgment, order, or proceeding because of mistake, inadvertence, surprise, or excusable neglect. To establish mistake, inadvertence, or excusable neglect under this rule and in the context of this case, the Claimant must show that (1) she had a meritorious claim and/or defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to timely reply to the complaint. *In re Worldwide Web Systems, Inc. v. Valdez*, 328 F.3d 1291, 1295 (11th Cir. 2003) (citing *EEOC v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990)). "The term 'excusable neglect' in this context is generally 'understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence.'" *Noah v. Bond Cold Storage*, 408 F.3d 1043, 1045 (8th Cir. 2005) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 394 (1993)). As that court stated, "[t]o be excusable, however, the neglect must be accompanied by a showing of good faith and some reasonable basis for not complying with the rules. *Noah* at 1045 (citations omitted). Further, "an inexplicable delay in filing a motion to vacate after learning of a default judgment precludes relief under 60(b)(1)." *SEC v. Simmons,* 241 Fed. Appx. 660, 664 (11th Cir. 2007). The focus of the court's inquiry is on the operative circumstances before the entry of the judgment or order.

Claimant is generally correct that under Supplemental Rule F(4) where a claimant shows cause on a timely filed motion, courts must freely grant permission to late file claims. *Alter Barge Line, Inc.,* 272 F.3d at 397; *Jappinen v. Can. S.S. Lines, Ltd*, 417 F.2d 189 (6th Cir. 1969) (citations omitted). However, in cases where the action has been determined and is

no longer pending, courts have been far less forgiving. Thus, where the period of monition has expired and the case is no longer pending at the time the late claim is attempted, a number of courts have declined to allow for the late filing of claims *nunc pro tunc* under the *Texas Gulf Sulphur* standard. *See e.g., In re Complaint of Global Indus. Offshore, Inc.,* No. Civ.A. 97-3811, 2000 WL 1610384 (E.D. La. Oct. 26, 2000) (denying motion to reopen case where claimant did not bring claim against boat owner for over a year following crash and case had otherwise been settled and dismissed); *In the Matter of Complaint of Gulf Inland Marine Corp.*, No. Civ.A. 97-2617, 1998 WL 560342 (E.D. La. Aug. 31, 1998) (declining to allow State of Louisiana to reopen case to bring a claim *nunc pro tunc* where such relief was sought over eight months after judgment was entered on the default of all claimants); *In re Trace Marine Inc.,* 114 Fed. Appx. 124 (5th Cir. 2004) (despite the harsh consequences, no error in the trial court's denial of motion for leave to file a late claim, despite fact that two claimants were prevented from timely filing because of a death, another claimant suffered failed mental health, and claimants' counsel was inept). As Holmberg notes, even in instances where the limitation action is pending, a court may decline to permit the late filing of a claim where the showing of cause is inadequate. *See e.g., In the Matter of Overseas Containers, Ltd.*, No. 84 Civ 2306 (CBM), 1985 WL 5088 (S.D. N.Y. Dec. 19, 1985) (equities and fact that claimant negligently failed to ascertain its legal rights in a timely fashion tipped the balance against permitting the late filing).

Here, the case is not pending, having been finally resolved by way of a final order of exoneration in the nature of a default judgment. Thus, the liberal standard for freely granting

permission for a claim *nunc pro tunc* under Supplemental Rule F(4) is not in play. If Claimant is entitled to relief at all, either by way of Supplemental Rule F(4) or by way of Rule 60(b), she must demonstrate that the equities and circumstances in this case merit a finding of such excusable neglect as to warrant the court's vacating its prior order and permitting the case to be reopened.

I initially conclude that Claimant can present a meritorious defense/claim to the Holmberg complaint. As she urges, the doctrine of comparative fault is applicable in these circumstances. *See United States v. Reliable Transfer Co.,* 421 U.S. 397, 411 (1975); *Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller,* 957 F.2d 1575 (11th Cir. 1992). Despite the finding by the accident investigator that the Cunningham vessel rather than the Holmberg vessel was at fault in this accident for failure of proper navigational lights, Claimant proffers some evidence that Holmberg was driving his vessel at night at a speed of 35 to 40 mph, well in excess of the posted speed limit of 25 mph. Holmberg too was issued a warning, post-accident, for having expired visual distress signals. Given that Holmberg too arguably acted with some degree of negligence, Claimant can present an arguable defense to the exoneration and limitation of liability claims. Given the comparative negligence standard at play, Claimant can also pursue an arguable personal injury claim for her significant injuries. I find the remaining two elements under Rule 60(b) are more problematic.

On the matter of prejudice, while it is correct that the proceeding had not advanced far in this court and there was no merits determination, reopening the case would result in Holmberg losing the complete exoneration from liability afforded by the court's order. This is

no small loss and in my view weighs heavily in Holmberg's favor on this motion. However, as Claimant urges, "there is a strong policy of determining cases on their merits and therefore [the court] views defaults with disfavor." *Valdez,* 328 F.3d at 1295. "[A]lthough the desideratum of finality is an important goal, the justice-function of the courts demands that it must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981).

On the matter of her excusable neglect, Claimant suggests, without actually so stating, that she was not privy to the proceedings in this court prior to her receipt of the August 22, 2008, Second Notice from the Clerk. If so, this appears, in part, a matter of her own doing. Prior thereto, all correspondence was sent to Claimant at her aging mother's address rather than her own. However, the mother's address was Claimant's stated address both on the accident report taken by the Florida Fish and Wildlife Conservation Commission and in correspondence by her first attorney. Thus, if she was in the dark about proceedings in this court, Claimant shares at least some of the blame. However, it also appears accurate that Claimant hired the Burnetti law firm in a timely manner after the accident and looked to it for representation. Holmberg's attorney was aware of that counsel's representation of Claimant at least by January 2008, when he corresponded with him. Despite this fact, it does not appear that the Burnetti firm was noticed on any filings by Holmberg's attorney. In any event, the operative notice was the Second Notice, mailed on August 22, 2008, to her address on

13

Eagleview Drive and it is clear that at that point Claimant was advised of the proceedings before this court and that something needed to be done by September 18, 2008.

Upon receipt of the Second Notice, Claimant avers that she promptly contacted the Burnetti law firm and spoke with "Tim" who acknowledged that they were aware of the deadline in the notice. By her account, she next heard from the law firm on or after the September 18, 2008, deadline for claims when she received a letter from attorney Philip J. Slotnick who advised her that the Burnetti firm was not going to represent her.[4] This letter made no mention of the monition deadline but instead advised Claimant that the statute of limitations for negligence claims was four years. Claimant then contacted the Florida Bar for a referral and on October 1, 2008, she hired new counsel. By that counsel's testimony, Claimant did not advise him of the limitation action when they first met. On October 23, 2008, counsel forwarded a letter of representation and request for insurance information to Holmberg. By counsel's account, he first learned of the limitation action in the follow-up letter from Holmberg's counsel on November 10, 2008, five days after Holmberg was exonerated by the court. Thereafter on December 2, 2008, Claimant retained admiralty counsel who filed the motion to reopen the case on the following day.

The proffered facts indicate that from sometime after the accident until the very deadline for filing claims under the Second Notice, Claimant believed she was represented by counsel who was looking out for her interests. Clearly she was mistaken in this belief, but not

---

[4]Given that Claimant believes she retained this law firm in July 2007, and they acted in her stead as such as early as December 20, 1997, I find the timing of this letter and the firm's abandonment of Claimant's case particularly reprehensible.

unreasonably so. When Claimant was advised that her first counsel was not going to represent her, she acted with reasonable dispatch to obtain new counsel. In my view, her diligence reflects favorably on her position on this motion. On the other hand, she failed to advise new counsel of the Second Notice and thereby, the limitations action, at the earliest opportunity. By her own admission, she knew she was required to do something by this notice although she did not know what. As a result, she did not bring this matter to the attention of her new attorney before the default was entered and Holmberg moved for exoneration. Had she done so, the default and subsequent order would likely have been avoided. This lapse by Claimant militates against her equitable argument. While Holmberg criticizes Claimant's new counsel's diligence as well, the record indicates that he only became aware of the limitation action after the exoneration order was entered. It is apparent that he acted with reasonable speed to assist Claimant in obtaining admiralty counsel and in my view, cannot be faulted for a lack of diligence.

While I find it a very close issue, given the equitable nature of the proceedings, I conclude the balance of equities tips slightly in favor of Claimant being permitted to reopen the case for further proceedings on the exoneration and limitations actions and her own claims. In my view, Claimant evidenced at all times a desire to pursue her personal injury claim. It is apparent she chose to do this through counsel rather than on her own. When her first counsel baled out on her, she diligently sought another attorney to pursue the case. While she made a significant mistake by not providing new counsel with the Second Notice, such appears the product of ignorance and negligence rather than bad faith. While I do not condone

the failure of Claimant to fully advise her new attorney of the circumstances of the court proceedings, this alone is not enough to convince me that her request that the case be reopened should not be granted so that the case may be considered on the merits. While Mr. Holmberg will lose the benefit of a complete exoneration, this is not wholly inequitable in the given circumstances. The decision here is left to the sound discretion of the court. I have considered those cases which would support a conclusion to uphold the finality of the court's prior order, however, in my view, the better course in this case is to grant the Rule 60(b) request to reopen the case, vacate the order of exoneration and the injunction thereunder, order reinstatement of the ad interim stipulation, and direct Claimant to answer the complaint.

IV.

Accordingly, it is recommended that Claimant Kandi Wenzel's **Motion to Reopen Case, Vacate Order Granting Petitioner's Motion for Exoneration of Liability, Injunction as to Lawsuits and Claims, and for Reinstatement of Ad Interim Stipulation and for Allowing the Late Filing of a Claim of Kandi Wenzel** (Doc. 22) be **GRANTED.**

**Recommended** in Tampa, Florida, this 28th day of April 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.


Copies to:
The Honorable James D. Whittemore
Counsel of Record